# Exhibit A

# **SETTLEMENT AGREEMENT AND RELEASE**

This Settlement Agreement and Release ("Agreement") is entered into by and between Tina Mentzer and Arlie Morse (the "Plaintiff") and Eid's Grandkids, LLC, Nilucamm, LLC, Snyder Motel, Ferial Eid, Talaat Eid, Mark Eid, and Monica Iskandar (collectively, "Defendants").

WHEREAS, on April 4, 2020, this action/the underlying Complaint was removed from the Lancaster County Court of Common Pleas to this U.S. District Court for the Eastern District of Pennsylvania; and,

WHEREAS, the Complaint alleges an employment relationship existed between the Parties and that the Defendants' failed to pay the Plaintiffs minimum wage and overtime pay in violation of the Fair Labor Standards Act ("FLSA") and Pennsylvania's Minimum Wage Act ("PMWA"); and,

WHEREAS, on April 28, 2020, the Defendants filed an Answer with Affirmative Defenses to Plaintiffs' Complaint; and,

WHEREAS, Defendants at all times have denied, and continue to deny, the allegations and claims set forth in the Complaint, including, without limitation, they dent that an employment relationship existed between the Parties and further deny that the Defendants collectively, or any of them individually or in any combination, violated the FLSA and/or PMWA; and

WHEREAS, at this time, the Plaintiffs continue to residence at a property owned by certain of the Defendants, located at 2288 New Holland Pk., Lancaster, PA 17601 (the "Property"); and

WHEREAS, the Plaintiffs and Defendants (through counsel) have engaged in good-faith discussions related to the merits of and issues relevant to this matter, thus affording each party the ability to understand and assess the substance of their respective claims and defenses; and

WHEREAS, *bona fide* disputes exist between the Plaintiffs and Defendants regarding the merits of this case; and

WHEREAS, this Agreement is the product of good-faith negotiations and, if approved by the Court, will serve to achieve a mutually satisfactory resolution of the wage and hour claims between the Parties, in a fair and reasonable manner, and at the same afford the Parties the significant benefit of avoiding time consuming, inconvenient and costly litigation;  and,

WHEREAS, this Agreement also resolves other important issues and bona fide disputes between the Parties that bare outside of the four corners of the Complaint, including by confirming the conclusion of the former working relationship and addressing the timing of and manner by which the Plaintiffs will vacate the Property; and

WHEREAS, the Parties believe that the terms of settlement as set forth in this Agreement are fair, reasonable, and adequate, and that the settlement is the best interest of both Parties in light of all known facts and circumstances, including, without limitation, the Plaintiffs' claims, the risk of significant delay, contested issues, defenses to be asserted by Defendants, the uncertainty and overall risks of litigation, and potential appellate issues; and,

WHEREAS, the Plaintiffs and Defendants desire to enter into this Agreement, with the approval of this Court, to fully and finally settle, resolve, and dismiss with prejudice this action and all claims asserted in the Complaint as well as all other actual and/or potential disputes between of the Parties; and

NOW THEREFORE, in consideration of the mutual covenants set forth in this Agreement, and the settlement consideration to be received by the plaintiffs, which is acknowledged as legally sufficient, the Parties stipulate and agree as follows:

1. **Settlement Contingent on Court Approval and Dismissal of Action.** (a) This Agreement and the Parties' settlement are contingent on the entry of an order by the Court approving same ("Approval Order") and dismissing the entire Action with prejudice (the date of that order defined as "the Approval Date"). If the Court does not enter such an order, this Agreement and the Parties' settlement will be null and void, the underlying action will continue to go forward in the Court, and all Parties will return to the *status quo ante.*

(b) This Agreement and the Parties' settlement are contingent on the Court dismissing with prejudice all claims against Defendants Nilucamm, LLC, Mark Eid, and Monica Iskandar and directing that those party names be removed from the case caption and docket, and the dismissal of the of this Action in its entirety, with prejudice, except that the Court shall retain jurisdiction for a period of ninety (90) days in the event that settlement is not finalized.

2. **No Admission of Liability**. Any actions or payments made hereunder are made solely for purposes of settlement and compromise and are not to be construed as (and are not) any admission of liability or unlawful conduct by the Defendants or any of the Releasees (defined below), and Defendants and the Releasees expressly deny any such liability or unlawful or wrongful conduct.

3. **Plaintiffs' Obligation to Vacate Defendants' Property; Rent Effective and After June 1, 2020**.

The Plaintiffs shall completely and permanently vacate the Property within twenty-four (24) hours following the Approval Order, or sooner. The Plaintiffs agree that they will not damage the Property or remove anything from the Property that does not belong to them, and the Defendants retain all rights and remedies available by law to redress any damage to and/or items missing from the Property.

If the Plaintiffs remain on the property beyond May 31, 2020, for any reason, the Plaintiffs agree to pay a weekly rental charge (WRC) for rent and utilities in the amount of

Five Hundred Dollars ($500), charged in full commencing on June 1, 2020, and on the first day of each successive week (partial or full) thereafter that the Plaintiffs remain on the Property. The Parties agree that the WRC is a fair and reasonable amount for rent and utilities related to the Property. The full amount of any WRC due shall be deducted from and reduce the Maximum Settlement Payment Amount ("MSPA") referenced and defined in paragraph 4 below, provided, however, that WRC shall not be applied to reduce or otherwise impact the Plaintiffs' counsel's attorney's fee portion of the MSPA as approved by the Court.  In the event any WRC balance remains due after permissible deductions are made from the MSPA or because the Plaintiffs have forfeited their entitlement to the Settlement Payment as set forth in Paragraph 4(a)(iv) below, then the Plaintiffs shall be responsible to pay such WRC balance due to the Defendants.

In addition, the Defendants reserve the right to initiate eviction proceedings as soon as they are permitted to, pursuant to applicable federal, state or local law and/or order.

4. **Settlement Payment**.  (a)  Contingent on Court approval of this Agreement, the Plaintiffs will be entitled to receive, and Defendants will pay to Plaintiffs, a Maximum Settlement Payment Amount ("MSPA") not to exceed Forty-Seven Thousand Five Hundred Dollars ($47,500) in accordance with and subject to the following terms and conditions:

   i.   Within forty-eight (48) hours of the Court's issuance of the Approval Order, Defendants through their counsel will send to Plaintiffs' counsel (via Federal Express, no signature required for next day delivery) a good-faith Initial Settlement Payment ("ISP") in the amount of Twenty-Three Thousand Seven Hundred and Fifty Dollars ($23,750), representing half of the MSPA, in the form of three checks issued from the escrow account of  Defendants' counsel, as follows: one check in the amount of Eighteen Thousand Seven Hundred and Fifty Dollars ($18,750), payable to "Karpf, Karpf & Cerutti, P.C. on behalf of Tina Mentzer and Arlie Morse"; one check in the amount of Two Thousand Five Hundred Dollars ($2,500) payable to Tina Mentzer; and one check one check in the amount of Two Thousand Five Hundred Dollars ($2,500) payable to Arlie Morse.

   ii.   The same day that the above ISP is received by Plaintiffs' counsel (with the understanding that at this time mail is only retrieved by Plaintiffs' counsel on Mondays, Wednesdays and Fridays, due to Plaintiffs' counsel's office being closed pursuant to Bucks County's "Stay-home" Order), Plaintiffs' counsel will send/release to Plaintiffs (via FedEx next day delivery) Five Thousand Dollars ($5,000) of the ISP (specifically, the two $2,500 checks referenced in Paragraph 3.(a)(i) above) to facilitate the Plaintiffs' ability to promptly vacate the Property;

   iii.   The Plaintiffs shall fully and permanently vacate the Property within twenty-four (24) hours after their receipt of the two checks referenced in Paragraph 3.(a)(ii) above, and Plaintiff's counsel shall promptly notify Defendants' counsel in writing (by email) when the Plaintiffs have completely and permanently vacated the Property;

    iv.    Following notice by Plaintiffs' counsel to Defendants' counsel that the Plaintiffs have completely and permanently vacated the Property as set forth in Paragraph 3.(a)(iii) above, the Defendants shall have up to twenty-four (24) hours to confirm same and Defendants' counsel shall promptly notify Plaintiffs' counsel (by email) whether the Plaintiffs have vacated the Property as required;

    v.    If, and upon receiving confirmation from Defendants' counsel that, the Plaintiffs have completely and permanently vacated the Property:

- Plaintiffs' counsel may release the remaining balance of the Initial Settlement Payment ($18,750), and

- The remaining balance of the Final Net Settlement Payment will be issued to Plaintiffs' counsel. The Final Net Settlement Payment shall be equal to: the MSPA, less the ISP, less WRC due in accordance with Paragraph 3 above, if any.)

    vi.    However, if the Plaintiffs fail to completely and timely vacate the Property in accordance with the terms set forth in Paragraph 3.(a)(iii) above, the Plaintiffs shall be required to immediately reimburse to Defendants the Five Thousand ($5,000) portion of the ISP received by them, and in addition the Plaintiffs shall irrevocably forfeit entitlement to any further settlement payment and shall be responsible for paying all reasonable costs (including attorney's fees) incurred by Defendants in connection with all reasonable and lawful actions taken and proceedings initiated and maintained by Defendants seeking to evict Plaintiffs from the Property. In this event, the Agreement (including, without limitation, the dismissal and release provisions) otherwise remains in full force and effect, and the Plaintiffs' counsel shall retain its right to full payment of the attorney's fee portion of the MSPA as approved by the Court.

    (b)    An IRS Form 1099 may be issued by one of the Defendants to each Plaintiff reflecting their portion of settlement payment received or the payment may be reported on the year-end IRS Form 1099. Additionally, each Plaintiffs agrees to complete an IRS Form W-9, if requested. The Plaintiffs, collectively and each individually, understand and agree that (i) no taxes or withholdings will be applied to the settlement payments they will receive, (ii) that Plaintiffs, and not Defendants (or any of them), are responsible for and assume any and all tax liability on account of the settlement payments that they will receive and that will be paid on their behalves; (iii) that the Plaintiffs and/or their counsel (as applicable), and not Defendants (or any of them), will also be responsible for any and all tax liability on account of any payment to be received by Plaintiffs' counsel as approved by the Court, and (iv) that the Plaintiffs (collectively and each of them individually) shall indemnify and hold harmless Defendants with respect to any and all tax liability, costs, penalties, claims, demands, or expenses that may be assessed against the Company by any taxing authority as a result of or attributable or relating to the Settlement Payment.

    With respect to any payment for attorney's fees and costs approved by the Court, such payment will be issued to "Karpf, Karpf & Cerutti, P.C. on behalf of Tina Mentzer and Arlie

Morse" provided that Plaintiffs' counsel provides a completed Form W-9.  Plaintiffs' counsel shall sign this Agreement solely for the purpose of  acknowledging that any recovered fees/expenses constitute taxable income, that they are solely responsible for the payment of taxes relating to the payment, and that they will defend, hold harmless and indemnify Defendants and Releasees for any tax liabilities relating to such payment.  A 1099 will be issued to Karpf, Karpf & Cerutti, P.C reflecting any fee/expense payment and Karpf, Karpf & Cerutti, P.C agrees to provide a completed IRS Form W-9. No amount of tax withholdings will be made from any Settlement Payment.

     5.    **<u>Release of Claims.</u>**  In consideration of the Settlement Payment and all other promises set forth in this Agreement, the Plaintiffs (collectively and individually, and on behalf of each and all of their respective representatives, agents, estate, heirs, successors and assigns) waive, release, and forever discharge Releasees (defined to include: Eid's Grandkids, LLC, Nilucamm, LLC, and Snyder Motel, and each of their past and present parents, subsidiaries, members and affiliates and all of their insurers, predecessors, successors and assigns, directors, officers, agents, employees and/or attorneys, all both individually and in their official capacities, as well as Ferial Eid, Talaat Eid, Mark Eid, and Monica Iskandar) from any and all legally waivable claims, actions or causes of action, suits, claims, complaints, contracts, agreements, promises, liabilities, torts, debts, damages, controversies, judgments, rights and demands, whether existing or contingent, known or unknown, suspected or unsuspected, arising prior to the Approval Date and arising under the FLSA, PMWA, Pennsylvania's Wage Payment and Collection Law, all as amended, and/or any other federal, state, or local laws or common law or legal theories seeking unpaid minimum wage, overtime pay, and/or compensation or other payments of any kind for work performed as an employee or an independent contractor. This release also includes all claims for legal costs/expenses, legal fees, liquidated damages, interest, declaratory or injunctive relief, or other relief relating to or stemming from such released claims.

     In addition, because the Parties' negotiated settlement also addresses other important and disputed issues between the Parties, such as related to the termination of the relationship between the Parties and the Parties' agreement that the Plaintiffs will vacate Defendants' Property upon the Court's approval of the Settlement, the Plaintiffs (collectively and individually, and on behalf of each and all of their respective representatives, agents, estate, heirs, successors and assigns) irrevocably, knowingly, irrevocably, and unconditionally waive and release fully and forever any claim, cause of action, loss, expense, or damage of any and every nature whatsoever against Relesees, of whatever nature, and including without limitation based on any other federal, state, or local law, or any claim under any common law theory, and any and all claims that could be asserted against Releasees for any negligent or intentional tort, assault and battery, negligent infliction of emotional distress, intentional infliction of emotional distress, and punitive damages, arising from any occurrence or occurrences, from the beginning of time until the Approval Date, including, without limitation, the claims asserted in the underlying Complaint as well as any and all other claims arising or in any way resulting from or relating to the Plaintiff's working relationship with the Releasees (whether as independent contractors or employees) and/or the termination of that relationship, as well as claims arising or in any way resulting from or relating to the Plaintiffs residency at the Property and/or any other property owned or managed by Releasees and/or the termination of such residency.

6. **Confidentiality and Public Comment.**

The Parties and their counsel will not issue any press release or participate in any communication or contact with the media regarding this settlement or any other matter related to this litigation. This includes, without limitation, that the Plaintiffs, collectively and individually, shall not publish or issue any press release or publicly comment or participate in any communication or contact with the media regarding this settlement or any other matter related to this litigation and likewise will not post any information about the Action or the Settlement on any website and/or social media platform (including, without limitation, Facebook, LinkedIn, Twitter, etc.). If the Plaintiffs and/or their counsel are contacted by the media, they will inform them only that the case has been amicably resolved. The Parties and their counsel acknowledge that this Agreement will be publicly filed on the Court's ECF system as part of the settlement approval process, and that any such filings shall not constitute a breach of this Paragraph 6, or any other provision of this Agreement.

7. **Mutual Non-disparagement.** The Plaintiffs shall not make or cause to be made any statements which disparage the Releasees, either orally or in writing. None of the individual Defendants shall make or cause to be made any statements which disparage the Plaintiffs, either orally or in writing. If contacted for an employment reference, Defendants shall confirm dates of former working relationship only, and shall not comment on the circumstances of Plaintiffs' separation therefrom, or the fact that Plaintiffs commenced litigation against them.

8. **Settlement of Disputes.**

All disputes relating to this Agreement and its implementation shall be within the continuing jurisdiction of the Court over the terms and conditions of this Agreement, until all payments and obligations contemplated by the Agreement have been fully carried out.

9. **Modification.**

This Agreement may not be changed, altered, or modified, except in writing and signed by the Parties hereto, and approved by the Court.

10. **Entire Agreement.**

This Agreement constitute the entire agreement between the Parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary, or contradict the terms of this Agreement. In the event of any conflict between this Agreement and any other settlement-related document, the Parties intend that this Agreement shall be controlling.

11. **Choice of Law/Jurisdiction.**

This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the Commonwealth of Pennsylvania, both in its procedural and

substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Eastern District of Pennsylvania. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

12. **Counterparts**.

This Agreement may be executed in counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Agreement, which shall be binding upon and effective as to all Parties. An emailed PDF scanned version of a manual signature shall also be deemed an original signature.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

PLAINTIFFS

_____     Dated: _____
Tina Mentzer

_____     Dated: _____
Arlie Morse


FOR PLAINTIFF'S COUNSEL: Only with respect to the obligations in Paragraphs 4, limited to any tax responsibility for Plaintiffs' counsel's attorneys' fees and 6.

By _____     Dated: _____
    Adam Lease, Esq.


FOR DEFENDANTS

Ferial Eid
__*Ferial Eid*_____     Dated: _5/21/20_____
Signature

Talaat Eid
__*T. S. E.*_____     Dated: _5/21/20_____
Signature


FOR EID'S GRANDKIDS LLC and SNYDER MOTEL

__*Ferial Eid*_____     Dated: _5/21/20_____
By: Ferial Eid
__*T. S. E.*_____     Dated: _5/21/20_____
Talaat Eid

- 8 -

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below:

PLAINTIFFS

_____*Tina Mentzer (signed)*_____  Dated: 5-20-2020
Tina Mentzer

_____*Arlie Morse (signed)*_____  Dated: 05/20/2020
Arlie Morse

FOR PLAINTIFF'S COUNSEL: Only with respect to the obligations in Paragraphs 4, limited to any tax responsibility for Plaintiffs' counsel's attorneys' fees and 6.

By _____*Adam Lease (DocuSigned, D6F0A697B8BA402...)*_____  Dated: 5/21/2020
Adam Lease, Esq.

FOR DEFENDANTS

Ferial Eid

_____  Dated: _____
Signature

Talaat Eid

_____  Dated: _____
Signature

FOR EID'S GRANDKIDS LLC and SNYDER MOTEL

_____  Dated: _____
By: Ferial Eid

_____  Dated: _____
Talaat Eid

- 8 -